**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

|  |  |  |
|---|---|---|
| ALDERIAN TECHNOLOGIES LLC, | ) ) | Case No. 2:26-cv-00 |
| Plaintiff, | ) ) ) | **JURY TRIAL DEMANDED** |
| v. | ) ) | |
| XIAOMI  CORPORATION,  XIAOMI  H.K LTD., XIAOMI COMMUNICATIONS CO., LTD., and XIAOMI, INC., | ) ) ) ) | |
| Defendants. | ) ) ) | |

**COMPLAINT FOR PATENT INFRINGEMENT**

Plaintiff Alderian Technologies LLC ("Alderian" or "Plaintiff") for its Complaint against Defendants Xiaomi Corporation ("Xiaomi Corp."), Xiaomi H.K. Ltd. ("Xiaomi H.K."), Xiaomi Communications Co., Ltd. ("Xiaomi Communications"), and Xiaomi, Inc. (collectively, "Xiaomi" or "Defendants") for patent infringement alleges as follows:

**THE PARTIES**

1.      Alderian is a limited liability company, organized and existing under the laws of the State of Texas, with its principal place of business located at 104 East Houston Street, Marshall, Texas 75670.

2.      On information and belief, Defendant Xiaomi Corp. is a corporation organized and existing under the laws of the Cayman Islands, with a place of business at Maples Corporate Services Limited, P.O. Box 309, Ugland House, Grand Cayman, KY1-1104, Cayman Islands. On information and belief, Xiaomi Corp. may be served pursuant to the provisions of the Hague Convention. On information and belief, Xiaomi Corp. does business in Texas and in the Eastern District of Texas, directly or through its subsidiaries.

3.	On information and belief, Defendant Xiaomi Communications is a corporation organized and existing under the laws of the People's Republic of China, with its principal place of business at Xiaomi Office Building, 68 Qinghe Middle Street, Haidian District, Beijing, China 100085. On information and belief, Xiaomi Communications may be served pursuant to the provisions of the Hague Convention. On information and belief, Xiaomi Communications does business in Texas and in the Eastern District of Texas, directly or through its subsidiaries.

4.	On information and belief, Xiaomi H.K. is a corporation organized and existing under the laws of Hong Kong, with its principal place of business at Unit 806, Tower 2 8/F, Cheung Sha Wan Plaza, 833 Cheung Sha Wan Road, Kowloon City, Hong Kong SAR, China.  On information and belief, Xiaomi H.K. may be served pursuant to the provisions of the Hague Convention. On information and belief, Xiaomi H.K. does business in Texas and in the Eastern District of Texas, directly or through its subsidiaries.

5.	On information and belief, Xiaomi, Inc. is a corporation organized under the laws of People's Republic of China, with its principal place of business at Xiaomi Office Building, 68 Qinghe Middle Street, Haidian District, Beijing, China 100085. On information and belief, Xiaomi Inc. may be served pursuant to the provisions of the Hague Convention.  On information and belief, Xiaomi Inc. does business in Texas and in the Eastern District of Texas, directly or through its subsidiaries.

6.	Defendants have authorized sellers and sales representatives that offer and sell products pertinent to this Complaint through the State of Texas, including in this Judicial District, and to consumers throughout this Judicial District, such as: Best Buy, 422 West TX-281 Loop, Suite 100, Longview, Texas 75605; and Walmart, 1701 East End Boulevard North, Marshall,

Texas 75670; 515 East Loop 281, Longview, Texas 75605; and 4006 Estes Parkway , Longview, Texas 75603.

7.    Defendants design, manufacture, make, use, sell, and/or import into the United States watches with electronic display and fitness tracking capabilities. Defendants' watches and fitness tracking devices are marketed, used, offered for sale, and/or sold throughout the United States, including within this District.

## JURISDICTION AND VENUE

8.    This is an action for patent infringement arising under the patent laws of the United States, 35 U.S.C. §§ 1, *et seq*. This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1332, 1338 and 1367.

9.    This Court has personal jurisdiction over Defendants consistent with the requirements of the Due Process Clause of the United States Constitution and the Texas Long Arm Statute. On information and belief, Defendants have sufficient minimum contacts with the forum because Defendants transact substantial business in the State of Texas and in this Judicial District. Further, Defendants have, directly or through subsidiaries or intermediaries, committed and continue to commit acts of patent infringement in the State of Texas and in this Judicial District as alleged in this Complaint, alleged more particularly below. Furthermore, Defendants have purposefully availed themselves of the privileges of conducting business in the State of Texas and in this District; Defendants have sought protection and benefit from the laws of the State of Texas; and Plaintiff's causes of action arise directly from Defendants' business contacts and other activities in the State of Texas and in this District.

10.    Defendants are subject to this Court's specific and general personal jurisdiction due at least to their substantial business in this forum, including (i) at least a portion of the

3

infringements alleged herein; and (ii) regularly doing or soliciting business, engaging in other persistent courses of conduct, or deriving substantial revenue from goods and services provided to individuals in Texas and in this district.

11.     Specifically, Defendants intend to do and do business in, and have committed acts of infringement in this District, in this State of Texas, and in the United States, directly, through intermediaries, and offer and send their products or services, including those accused of infringement here, to customers and potential customers located in this State, including in this District, and in the United States.

12.     On information and belief, Defendants also make their products available for sale in this District at least through third-party sellers, such as Walmart and Amazon.[1]

13.     Defendants have committed acts of infringement in this District, including, but not limited to, making, using, selling, offering for sale, and importing of the Accused Products.

14.     Defendants have purposefully directed infringing activities at residents of the State of Texas, and this litigation results from those infringing activities. Defendants regularly sell (either directly or indirectly), their products within this District. For example, Defendants have placed infringing products into the stream of commerce via established distribution channels with the knowledge or understanding that such products are being sold in this Judicial District and the State of Texas. For example, Defendants make their products available in stores, as discussed above (*see* ¶ 12), either directly or indirectly, as well as on the internet through online storefronts, such as Amazon.com. Listings for Defendants' products on Amazon.com link directly to Defendants' official Amazon storefront.[2]

---

[1] https://www.walmart.com/browse/0?facet=brand:Xiaomi.
[2] https://www.amazon.com/Xiaomi-Smart-Band-Global-Version/dp/B0CD2MP728/ref=sr_1_1?crid=KSL2ZVFSR6XR&dib=eyJ2IjoiMSJ9.3s2i7FhF5W

4

15.     Defendants have also been named as respondents in investigations before the International Trade Commission for violations of section 337 of the Tariff Act of 1930, as amended, 19 U.S.C. 1337, demonstrating Defendants' knowing importation of goods into the United States.[3]

*16.*     By way of further example, in the past, Defendants have not formally contested jurisdiction and venue in this Court. *See, e.g., The Research Foundation for The State University of New York, et al. v. Xiaomi Corporation, et al.*, Case No. 2:23-cv-00353-RWS-RSP, Dkt. 16 (E.D. Tex. Feb. 1, 2024).

17.     In addition, or in the alternative, this Court has personal jurisdiction over Defendants under Federal Rule of Civil Procedure 4(k)(2), because the claims for patent infringement in this action arise under federal patent law, Defendants are not subject to the jurisdiction of the courts of general jurisdiction of any state, and exercising jurisdiction over Defendants is consistent with the United States Constitution.

18.     Defendants are subject to this Court's specific and/or general jurisdiction pursuant to due process and/or the Texas Long Arm Statute, due to their substantial and pervasive business in this State and Judicial District, including their infringing activities alleged herein, from which Defendants have derived substantial revenue from goods sold to Texas residents and consumers.

---

aQP3LLqGjT-OJ-n7MV35k_N0uir08uTJy_vskaFA6te5Y1zu9FqvBKKh3PUf_qRP2ynDpuEw58myM5yLVrj3Hx SexH3IaAeDG1g2SN76SfUHtAY26XfsDF0pgnC2xR8Xp1_Ba1qj5Dsmg-f-VESJnL5-BD67NVEMlYDtgzxQ5Cf8N2gYbFbiGTKKAn2FxXYnQkj7IsV9D0KWbXKzW6joj2YXgrK Z9v9kA.w4xC_vS9iE8wJmb7Uzg10zhjfKG3ix17mrK7NPaaPBA&dib_tag=se&keywords=xiaomi+smart+band+8&qid=1773243358&sprefix=Xiaomi+Smart+Band+8%2Caps%2C118&sr=8-1.

[3] https://public-inspection.federalregister.gov/2023-14840.pdf?1689165922.

19.     Venue is proper against Defendants in this District pursuant to 28 U.S.C. § 1391 because, among other things, Defendants are not residents of the United States and thus may be sued in any judicial district pursuant to 28 U.S.C. § 1391(c)(3). *See also In re: HTC Corporation*, 889 F.3d 1349, 1357 (Fed. Cir. 2018) ("The Court's recent decision in *TC Heartland* does not alter" the alien-venue rule).

## PATENTS-IN-SUIT

20.     On May 5, 2020, the United States Patent and Trademark Office duly and legally issued U.S. Patent No. 10,645,387 (the "'387 Patent") entitled "Predictive Quantization Coding Method and Video Compression System." A true and correct copy of the '387 Patent is available at: https://patentimages.storage.googleapis.com/0a/76/4b/4790b52e40849e/US10645387.pdf.

21.     On June 16, 2015, the United States Patent and Trademark Office duly and legally issued U.S. Patent No. 9,060,172 (the "'172 Patent") entitled "Methods and Systems for Mixed Spatial Resolution Video Compression." A true and correct copy of the '172 Patent is available at: https://patentimages.storage.googleapis.com/36/db/91/8b9678905bdceb/US9060172.pdf.

22.     Alderian is the sole and exclusive owner of all right, title, and interest in the '387 Patent and the '172 Patent (collectively, the "Patents-in-Suit" or "Asserted Patents") and holds the exclusive right to take all actions necessary to enforce its rights to the Patents-in-Suit, including the filing of this patent infringement lawsuit. Alderian also has the right to recover all damages for past, present, and future infringement of the Patents-in-Suit and to seek injunctive relief as appropriate under the law.

23.     Alderian has at all times complied with the marking provisions of 35 U.S.C. § 287 with respect to the Patents-in-Suit. On information and belief, prior assignees and licensees have also complied with the marking provisions of 35 U.S.C. § 287. Alternatively, upon information

6

and belief, no patented articles have ever been produced requiring marking.

## FACTUAL ALLEGATIONS

24.     The '387 Patent generally relates to systems and methods for predictive quantization coding and video compression. The technology described in the '387 Patent was developed by Quingdong Yue, Wenfang Ran, and Wen Li. For example, the technology of the '387 Patent is implemented today by products that contain SoCs, chipsets, and/or software, which utilize hardware and software encoders that perform predictive quantization coding and block-based depth map coding, including, but not limited to, Xiaomi/Redmi-branded smartphones and tablets, including, but not limited to, the Xiaomi 11T, Xiaomi 11T Pro, Redmi Note 10 Pro, Redmi Note 10S, Redmi Note 10 5G, Redmi 10, Xiaomi 12, Xiaomi 12 Pro, Xiaomi 12X, Xiaomi 12 Lite, Xiaomi 12T, Xiaomi 12T Pro, Redmi Note 11, Redmi Note 11S, Redmi Note 11S 5G, Redmi Note 11 Pro, Redmi Note 11 Pro 5G, Redmi Note 11 Pro+ 5G, Redmi 10 2022, Redmi 10A, Redmi 10C, Redmi 10 5G, Xiaomi 13, Xiaomi 13 Pro, Xiaomi 13 Lite, Xiaomi 13 Ultra, Xiaomi 13T, Xiaomi 13T Pro, Redmi Note 12, Redmi Note 12 5G, Redmi Note 12S, Redmi Note 12 Pro, Redmi Note 12 Pro 5G, Redmi Note 12 Pro+ 5G, Redmi 12, Redmi 12 5G, Redmi 12C, Redmi 13C, Redmi A2, Xiaomi 14, Xiaomi 14 Ultra, Xiaomi 14T, Xiaomi 14T Pro, Redmi Note 13, Redmi Note 13 5G, Redmi Note 13 Pro, Redmi Note 13 Pro 5G, Redmi Note 13 Pro+ 5G, Redmi 13, Redmi 14C, Redmi A3, Xiaomi 15, Xiaomi 15 Ultra, Xiaomi 15T, Xiaomi 15T Pro, Redmi Note 14, Redmi Note 14 5G, Redmi Note 14 Pro, Redmi Note 14 Pro 5G, Redmi Note 14 Pro+ 5G, Redmi 15, Redmi 15 5G, Redmi 15C, Redmi A5, Redmi Note 15 5G, Redmi Note 15 Pro 5G, and Redmi Note 15 Pro+ 5G, among other Xiaomi products (collectively, the "Accused Products").

25.     The '172 Patent generally relates to systems and methods for encoding a frame of visual data. The technology of the '172 Patent was developed by Walter Paul, Arkady Kopansky,

7

and Hui Cheng. For example, the technology of the '172 Patent is implemented today by products that contain SoCs, chipsets, and/or software, which utilize hardware and software encoders and decoders that perform mixed spatial resolution video compression, including, but not limited to, Xiaomi/Redmi-branded smartphones and tablets, such as the Accused Products, among other Xiaomi products.

26.    Xiaomi has infringed and is continuing to infringe the Patents-in-Suit by making, using, selling, offering to sell, and/or importing, and by actively inducing others to make, use, sell, offer to sell, and/or importing, products including, but not limited, the Accused Products.

## COUNT I
### (Infringement of the '387 Patent)

27.    Paragraphs 1 through 26 are incorporated by reference as if fully set forth herein.

28.    Alderian has not licensed or otherwise authorized Defendants to make, use, offer for sale, sell, or import any products that embody the inventions of the '387 Patent.

29.    Defendants have and continue to directly infringe the '387 Patent, either literally or under the doctrine of equivalents, without authority and in violation of 35 U.S.C. § 271, by making, using, offering to sell, selling, and/or importing into the United States products that satisfy each and every limitation of one or more claims of the '387 Patent. Such infringing products include Xiaomi/Redmi-branded smartphones and tablets, that contain SoCs, chipsets, and/or software, which utilize hardware and software encoders to perform predictive quantization coding, including, but not limited to, including, but not limited to, the Xiaomi 14T equipped with the MediaTek 8300-Ultra SoC, as well as other hardware and software encoders, among other Xiaomi products.

30.    For example, Defendants have and continue to directly infringe at least claim 1 of the '387 Patent by making, using, offering to sell, selling, and/or importing into the United States

products that include the Xiaomi 14T, among other Xiaomi products, among other Xiaomi products. The Xiaomi 14T is exemplary and representative of how the accused infringing products infringe the '387 Patent.

31.     For example, the Xiaomi 14T performs a quantization coding method, comprising the steps of: (a) dividing a pixel to be processed into a plurality of pixel components, wherein pixels of an image are sequentially taken as the pixel to be processed; (b) obtaining one pixel component to be processed from the plurality of pixel components; (c) obtaining texture direction gradients of the pixel component to be processed; (d) obtaining reference pixels according to the texture direction gradients and positional relationships between the pixel component to be processed and A remaining of the plurality of pixel components; (e) obtaining a prediction residual of the pixel component to be processed according to the reference pixels; (f) repeating steps (b) to (e), and taking each pixel component of the plurality of pixel components and obtaining the prediction residual corresponding thereto, and forming a prediction residual code stream including the prediction residuals of the pixel to be processed of the image; (g) dividing the prediction residual code stream into a plurality of quantization units each including a predetermined number of prediction residuals divided from the prediction residual code stream; and (h) obtaining first rate distortion optimizations and second rate distortion optimizations corresponding to the plurality of quantization units to obtain a quantization residual code stream (e.g., HEVC and/or other codecs use an inter-/intra-picture prediction with an algorithm that process blocks of data in a region according to neighboring regions/pixels to predict the value of the current pixel).

32.     On information and belief, at least MediaTek's codec components and related software codecs come preinstalled on devices with MediaTek SoCs.

33.     For example, the Accused Products include MediaTek codecs for video encoding

and compression.

```
android / kernel / common / 613725436e69f / . / drivers / media / platform / mtk-vcodec

   tree: 98d58b1c729b95bd3e99543ec80be2361727e3f6

   vdec/
   venc/
   Makefile
   mtk_vcodec_dec.c
   mtk_vcodec_dec.h
   mtk_vcodec_dec_drv.c
   mtk_vcodec_dec_pm.c
   mtk_vcodec_dec_pm.h
   mtk_vcodec_drv.h
   mtk_vcodec_enc.c
   mtk_vcodec_enc.h
   mtk_vcodec_enc_drv.c
   mtk_vcodec_enc_pm.c
   mtk_vcodec_enc_pm.h
   mtk_vcodec_fw.c
   mtk_vcodec_fw.h
   mtk_vcodec_fw_priv.h
   mtk_vcodec_fw_scp.c
   mtk_vcodec_fw_vpu.c
   mtk_vcodec_intr.c
   mtk_vcodec_intr.h
   mtk_vcodec_util.c
   mtk_vcodec_util.h
   vdec_drv_base.h
   vdec_drv_if.c
   vdec_drv_if.h
   vdec_ipi_msg.h
   vdec_vpu_if.c
   vdec_vpu_if.h
   venc_drv_base.h
   venc_drv_if.c
   venc_drv_if.h
   venc_ipi_msg.h
   venc_vpu_if.c
   venc_vpu_if.h
```
[4]

```
/**
 * @par Enumeration
 *   VENC_DRV_VIDEO_FORMAT_T
 * @par Description
 *   This is the item used for encode video format
 */
typedef enum __VENC_DRV_VIDEO_FORMAT_T {
        VENC_DRV_VIDEO_FORMAT_NONE,              /* /< Default value (not used) */
        VENC_DRV_VIDEO_FORMAT_MPEG4,             /* /< MPEG4 video format */
        VENC_DRV_VIDEO_FORMAT_MPEG4_1080P,       /* /< MPEG4 video format for 1080p */
        VENC_DRV_VIDEO_FORMAT_MPEG4_SHORT,       /* /< MPEG4_SHORT (H.263 baseline profile) video format */
        VENC_DRV_VIDEO_FORMAT_H263,              /* /< H.263 video format */
        VENC_DRV_VIDEO_FORMAT_H264,              /* /< H.264 video format */
        VENC_DRV_VIDEO_FORMAT_H264_VGA,          /* /< H.264 video format for VGA */
        VENC_DRV_VIDEO_FORMAT_WMV9,              /* /< WMV9 video format */
        VENC_DRV_VIDEO_FORMAT_VC1,               /* /< VC1 video format */
        VENC_DRV_VIDEO_FORMAT_VP8,               /* /< VP8 video format */
        VENC_DRV_VIDEO_FORMAT_JPEG,              /* /< JPEG picture format */
        VENC_DRV_VIDEO_FORMAT_HEVC,              /* /< HEVC video format */
        VENC_DRV_VIDEO_FORMAT_H264SEC,           /* /<: Secure H.264 */
        VENC_DRV_VIDEO_FORMAT_MAX = 0xFFFFFFFF   /* /< Max VENC_DRV_VIDEO_FORMAT_T value */
} VENC_DRV_VIDEO_FORMAT_T;
```
[5]

---

[4] https://android.googlesource.com/kernel/common/+/613725436e69f/drivers/media/platform/mtk-vcodec (last accessed on or about May 1, 2026).

[5] *See, e.g.*, https://android.googlesource.com/kernel/mediatek/%2B/android-mtk-3.18/drivers/misc/mediatek/videocodec/include/venc_drv_if_public.h, at lines 59-80 (last accessed on or about May 1, 2026).

34.    For example, such as in operation with HEVC and other codecs, MediaTek SoCs can code units in an intra prediction mode.

> **8.4.4.2    Intra sample prediction**
>
> **8.4.4.2.1  General intra sample prediction**
>
> Inputs to this process are:
>
> – a sample location ( xTbCmp, yTbCmp ) specifying the top-left sample of the current transform block relative to the top-left sample of the current picture,
> – a variable predModeIntra specifying the intra prediction mode,
> – a variable nTbS specifying the transform block size,
> – a variable cIdx specifying the colour component of the current block.
>
> Outputs of this process are the predicted samples predSamples[ x ][ y ], with x, y = 0..nTbS − 1. [6]

35.    By way of further example, H.265 V11 can recognize supplemental encoder-optimization information that can include quantization-related information.

> **D.4.5    Use of the encoder optimization information SEI messages**
>
> For purposes of interpretation of the encoder optimization information SEI message, the following variables are derived separately for each picture to which the encoder optimization information SEI message applies as follows:
>
> – CroppedWidth is set equal to pic_width_in_luma_samples − SubWidthC * ( conf_win_left_offset + conf_win_right_offset ).
> – CroppedHeight is set equal to pic_height_in_luma_samples − SubHeightC * ( conf_win_top_offset + conf_win_bottom_offset ).
> – PicQuant is set equal to 26 + init_qp_minus26 + slice_qp_delta of the first slice segment of the picture.
>
> When eoi_pic_quant_object_flag is equal to 1 and eoi_quant_threshold_delta is greater than 0, ( PicQuant + eoi_quant_threshold_delta ) shall be less than or equal to 51. When eoi_pic_quant_object_flag is equal to 0 and eoi_quant_threshold_delta is greater than 0, ( PicQuant − eoi_quant_threshold_delta ) shall be greater than or equal to −QpBdOffset. [7]

36.    On information and belief, Defendants' direct infringement of the '387 Patent includes, but is not limited to, testing, development, troubleshooting, and other use in the United

---

[6] *See* Int'l Telecomm. Union, Recommendation ITU-T H.265, *High Efficiency Video Coding* § 8.4, at 126 (Version 8, Aug. 2021), available at: https://e2e.ti.com/cfs-file/__key/communityserver-discussions-components-files/791/T_2D00_REC_2D00_H.265_2D00_202108_2D00_S_21002100_PDF_2D00_E.pdf; *see also Id.* at 126-142.

[7] *See* Int'l Telecomm. Union, Recommendation ITU-T H.265, *High Efficiency Video Coding*, at 424 (Version 11, Jan. 2026), available at: https://www.itu.int/rec/T-REC-H.265-202601-I.

States. Defendants also use the Accused Products at tradeshows in the United States to promote the sale of the Accused Products, as demonstrated above.

37.     Defendants have and continue to indirectly infringe one or more claims of the '387 Patent by knowingly and intentionally inducing others, including Xiaomi customers and end-users, to directly infringe, either literally or under the doctrine of equivalents, by making, using, offering to sell, selling and/or importing into the United States products that include infringing technology.

38.     Defendants, with knowledge that these products, or the use thereof, infringe the '387 Patent at least as of the date of this Complaint, knowingly and intentionally induced, and continues to knowingly and intentionally induce, direct infringement of the '387 Patent by providing these products to end users for use in an infringing manner. Alternatively, on information and belief, Defendants have adopted a policy of not reviewing the patents of others, and instructing their officers, agents, and employees to not review the patents of others, including specifically those related to Defendants' specific industry, with the subject belief that there was a high probability that Defendants would learn of their infringing activities, thereby remaining willfully blind to the '387 Patent at least as early as the issuance of the '387 Patent.

39.     Defendants have induced infringement by others, including end users, with the intent to cause infringing acts by others or, in the alternative, with the belief that there was a high probability that others, including end users, infringe the '387 Patent, but while remaining willfully blind to the infringement. Defendants have and continue to induce infringement by their customers and end-users by supplying them with instructions on how to operate the infringing technology in an infringing manner, while also making publicly available information on the infringing technology via Defendants' website, product literature and packaging, and other publications. For example, Xiaomi makes available to its customers and end-users various materials that instruct

them on how to use Xiaomi products in an infringing manner based on the product. These include, but are not limited to, User Guides.[8]

40.    On information and belief, these instructional materials are prepared by Defendants or at the direction of Defendants. Because of Defendants' inducement, Defendants' customers and end-users use the Accused Products in a way Defendants intend and directly infringe the '387 Patent. Defendants perform these affirmative acts with knowledge of the '387 Patent and with the intent, or willful blindness, that the induced acts directly infringe the '387 Patent.

41.    Defendants have indirectly infringed and continue to indirectly infringe one or more claims of the '387 Patent, as provided by 35 U.S.C. § 271(c), by contributing to direct infringement by others, such as customers and end-users, in this District and elsewhere in the United States. Defendants' affirmative acts of selling and offering to sell the Accused Products in this District and elsewhere in the United States and causing the Accused Products to be manufactured, used, sold, and offered for sale contributes to others' use and manufacture of the Accused Products such that the '387 Patent is directly infringed by others. The accused components within the Accused Products are material to the invention of the '387 Patent, including at least video encoders, are not staple articles or commodities of commerce, have no substantial non-infringing uses, and are known by Defendants to be especially made or adapted for use in the infringement of the '387 Patent. Defendants perform these affirmative acts with knowledge of the '387 Patent and with intent, or willful blindness, that they cause the direct infringement of the '387 Patent.

42.    Alderian has suffered damages as a result of Defendants' direct and indirect infringement of the '387 Patent in an amount to be proven at trial.

43.    Alderian has suffered, and will continue to suffer, irreparable harm as a result of

---

[8] *See* https://www.mi.com/us/support/user-guide-pdf/xiaomi-phone-generic-user-guide.

Defendants' infringement of the '387 Patent, for which there is no adequate remedy at law, unless Defendants' infringement is enjoined by this Court.

**COUNT II**
**(Infringement of the '172 Patent)**

44.    Paragraphs 1 through 26 are incorporated by reference as if fully set forth herein.

45.    Alderian has not licensed or otherwise authorized Defendants to make, use, offer for sale, sell, or import any products that embody the inventions of the '172 Patent.

46.    Defendants have and continue to directly infringe the '172 Patent, either literally or under the doctrine of equivalents, without authority and in violation of 35 U.S.C. § 271, by making, using, offering to sell, selling, and/or importing into the United States products that satisfy each and every limitation of one or more claims of the '172 Patent. Such infringing products include Xiaomi/Redmi-branded smartphones and tablets that contain SoCs, chipsets, and/or software, which utilize hardware and software decoders that perform mixed spatial resolution video compression, including, but not limited to, the Xiaomi 14T equipped with the MediaTek 8300-Ultra SoC, as well as other hardware and software encoders and decoders, among other Xiaomi products.

47.    For example, Defendants have and continue to directly infringe at least claim 1 of the '172 Patent by making, using, offering to sell, selling, and/or importing into the United States products that include the Xiaomi 14T, among other Xiaomi products. The Xiaomi 14T is exemplary and representative of how the accused infringing products infringe the '172 Patent.

48.    For example, the Xiaomi 14T performs a computer implemented method of video compression, the method comprising the steps of: generating a reconstructed full resolution frame and coded data corresponding to the reconstructed full resolution frame from an original full resolution frame; generating an upsampled reconstructed reduced spatial resolution frame and

coded data corresponding to the upsampled reconstructed reduced spatial resolution frame from the original full resolution frame; determining a first deviation by comparing at least one characteristic in the reconstructed full resolution frame with said at least one characteristic in the original full resolution frame; determining a second deviation by comparing said at least one characteristic in the upsampled reconstructed reduced spatial reduced resolution frame with said at least one characteristic in the original full resolution frame; and outputting the coded data corresponding to the reconstructed full resolution frame when the first deviation is less than the second deviation; otherwise outputting the coded data corresponding to the upsampled reconstructed reduced spatial reduced resolution frame.

49.    For example, the Accused Products include MediaTek codecs for video encoding and compression.



50.     For example, such as in operation with HEVC and other codecs, MediaTek SoCs

---

9

https://android.googlesource.com/kernel/common/+/613725436e69f/drivers/media/platform/mtk-vcodec (last accessed on or about May 1, 2026).

[10] *See, e.g.*, https://android.googlesource.com/kernel/mediatek/%2B/android-mtk-3.18/drivers/misc/mediatek/videocodec/include/venc_drv_if_public.h, at lines 59-80 (last accessed on or about May 1, 2026).

can code units in an intra prediction mode.[11] By way of further example, H.265 V11 can recognize supplemental encoder-optimization information that can include quantization-related information.

> **D.4.5    Use of the encoder optimization information SEI messages**
>
> For purposes of interpretation of the encoder optimization information SEI message, the following variables are derived separately for each picture to which the encoder optimization information SEI message applies as follows:
>
> – CroppedWidth is set equal to pic_width_in_luma_samples − SubWidthC * ( conf_win_left_offset + conf_win_right_offset ).
>
> – CroppedHeight is set equal to pic_height_in_luma_samples − SubHeightC * ( conf_win_top_offset + conf_win_bottom_offset ).
>
> – PicQuant is set equal to 26 + init_qp_minus26 + slice_qp_delta of the first slice segment of the picture.
>
> When eoi_pic_quant_object_flag is equal to 1 and eoi_quant_threshold_delta is greater than 0, ( PicQuant + eoi_quant_threshold_delta ) shall be less than or equal to 51. When eoi_pic_quant_object_flag is equal to 0 and eoi_quant_threshold_delta is greater than 0, ( PicQuant − eoi_quant_threshold_delta ) shall be greater than or equal to −QpBdOffset.[12]

51.     On information and belief, Defendants' direct infringement of the '172 Patent includes, but is not limited to, testing, development, troubleshooting, and other use in the United States. Defendants also use the Accused Products at tradeshows in the United States to promote the sale of the Accused Products, as demonstrated above.

52.     Defendants have and continue to indirectly infringe one or more claims of the '172 Patent by knowingly and intentionally inducing others, including Xiaomi customers and end-users, to directly infringe, either literally or under the doctrine of equivalents, by making, using, offering to sell, selling and/or importing into the United States products that include infringing technology.

53.     Defendants, with knowledge that these products, or the use thereof, infringe the '172 Patent at least as of the date of this Complaint, knowingly and intentionally induced, and

---

[11] *See, e.g.,* Int'l Telecomm. Union, Recommendation ITU-T H.265, *High Efficiency Video Coding*, at 126-142. (Version 8, Aug. 2021), available at: https://e2e.ti.com/cfs-file/__key/communityserver-discussions-components-files/791/T_2D00_REC_2D00_H.265_2D00_202108_2D00_S_21002100_PDF_2D00_E.pdf.

[12] *See* Int'l Telecomm. Union, Recommendation ITU-T H.265, *High Efficiency Video Coding* (Version 11, Jan. 2026), at 424 (Version 11, Jan. 2026), available at: https://www.itu.int/rec/T-REC-H.265-202601-I.

continues to knowingly and intentionally induce, direct infringement of the '172 Patent by providing these products to end users for use in an infringing manner. Alternatively, on information and belief, Defendants have adopted a policy of not reviewing the patents of others, and instructing their officers, agents, and employees to not review the patents of others, including specifically those related to Defendants' specific industry, with the subject belief that there was a high probability that Defendants would learn of their infringing activities, thereby remaining willfully blind to the '172 Patent at least as early as the issuance of the '172 Patent.

54.    Defendants have induced infringement by others, including end users, with the intent to cause infringing acts by others or, in the alternative, with the belief that there was a high probability that others, including end users, infringe the '172 Patent, but while remaining willfully blind to the infringement. Defendants have and continue to induce infringement by their customers and end-users by supplying them with instructions on how to operate the infringing technology in an infringing manner, while also making publicly available information on the infringing technology via Defendants' website, product literature and packaging, and other publications. For example, Xiaomi makes available to its customers and end-users various materials that instruct them on how to use Xiaomi products in an infringing manner based on the product. These include, but are not limited to, User Guides. [13]

55.    On information and belief, these instructional materials are prepared by Defendants or at the direction of Defendants. Because of Defendants' inducement, Defendants' customers and end-users use the Accused Products in a way Defendants intend and directly infringe the '172 Patent. Defendants perform these affirmative acts with knowledge of the '172 Patent and with the intent, or willful blindness, that the induced acts directly infringe the '172 Patent.

---

[13] *See* https://www.mi.com/us/support/user-guide-pdf/xiaomi-phone-generic-user-guide.

56. Defendants have indirectly infringed and continue to indirectly infringe one or more claims of the '172 Patent, as provided by 35 U.S.C. § 271(c), by contributing to direct infringement by others, such as customers and end-users, in this District and elsewhere in the United States. Defendants' affirmative acts of selling and offering to sell the Accused Products in this District and elsewhere in the United States and causing the Accused Products to be manufactured, used, sold, and offered for sale contributes to others' use and manufacture of the Accused Products such that the '172 Patent is directly infringed by others. The accused components within the Accused Products are material to the invention of the '172 Patent, including at least video encoders and decoders, are not staple articles or commodities of commerce, have no substantial non-infringing uses, and are known by Defendants to be especially made or adapted for use in the infringement of the '172 Patent. Defendants perform these affirmative acts with knowledge of the '172 Patent and with intent, or willful blindness, that they cause the direct infringement of the '172 Patent.

57. Alderian has suffered damages as a result of Defendants' direct and indirect infringement of the '172 Patent in an amount to be proven at trial.

58. Alderian has suffered, and will continue to suffer, irreparable harm as a result of Defendants' infringement of the '172 Patent, for which there is no adequate remedy at law, unless Defendants' infringement is enjoined by this Court.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury for all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, Alderian prays for relief against Defendants as follows:

a. Entry of judgment declaring that Defendants have directly and/or indirectly infringed one or more claims of each of the Patents-in-Suit;

b.  An order pursuant to 35 U.S.C. § 283 permanently enjoining Defendants, their officers, agents, servants, employees, attorneys, and those persons in active concert or participation with them, from further acts of infringement of one or more of the Patents-in-Suit;

c.  An order awarding damages sufficient to compensate Plaintiff for Defendants' infringement of the Patents-in-Suit, but in no event less than a reasonable royalty, together with interest and costs;

d.  Entry of judgment declaring that this case is exceptional and awarding Plaintiff its costs and reasonable attorney fees under 35 U.S.C. § 285; and

e.  Such other and further relief as the Court deems just and proper.

Dated: May 26, 2026                          Respectfully submitted,

 _/s/ John Andrew Rubino_
John Andrew Rubino
NY Bar No. 5020797
Email: jarubino@rubinoip.com
Michael Mondelli III
NY Bar No. 5805114
Email: mmondelli@rubinoip.com
**RUBINO IP**
51 J.F.K. Parkway
Short Hills, NJ 07078
Telephone: (201) 341-9445
Facsimile: (973) 535-0921

*ATTORNEYS FOR PLAINTIFF,*
*ALDERIAN TECHNOLOGIES LLC*

20